CELIO MARTÍN SANTOS ET AL., Plaintiffs and Appellants, *v.* URBAN RENEWAL AND HOUSING CORPORATION OF PUERTO RICO, ETC., Respondent and Appellee. LINO ORTIZ ET AL., Plaintiffs and Appellants, *v.* URBAN RENEWAL AND HOUSING CORPORATION OF PUERTO RICO, ETC., Respondent and Appellee.

Nos. R-63-5, R-63-6.          Decided October 7, 1963.

174

*Antonio Figueroa Rivera* and *Víctor M. Brignoni* for appellants. *José R. Vélez Torres, Elí B. Arroyo, José M. Cabrera Detjen,* and *Eugenio Ramos Ortiz* for respondent. *J. B. Fernández Badillo, Solicitor General, Rodolfo Cruz Contreras, Deputy Solicitor General,* and *Jenaro Marchand, Assistant Solicitor General,* as amicus curiae.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

These are cases of claims for wages. In case No. R-63-5, Celio Martín Santos *et al.,* the amended complaint states that the claimants worked for the Urban Renewal and Housing

Corporation of Puerto Rico and its predecessor the Housing Authority of Puerto Rico, as permanent employees in relation to its profitable enterprises, projects, and activities in the construction of buildings and immovables, among other purposes, to lease them for compensation; that the Housing Authority of Puerto Rico as well as its successor the Corporation compelled the claimants to work, without pay, in excess of 40 hours per week and during the 15-minute coffee-break after the first two hours of work, and during periods between 12:00 n. and 1:00 p.m.; that in some occasions, without any right whatsoever, the compensations of different claimants were changed, and several of the claimants were laid off and discharged without just cause and without paying them their wages. They also claim vacation pay corresponding to the period of ten years prior to June 1, 1962, in accordance with *the agreement* to that effect with respondent. In case No. R-63-6 of Lino Ortiz *et al.*, the complaint contains similar allegations, except for the claim related to vacations.

The respondent Corporation filed a motion to dismiss the complaints. The trial court rendered judgment dismissing them, as a question of law, on the ground that the Minimum Wage Act is not applicable to the Urban Renewal and Housing Corporation of Puerto Rico, and consequently, neither is Mandatory Decree No. 11 of the construction industry. This is the problem now before us.

The Urban Renewal and Housing Administration and respondent herein, Urban Renewal and Housing Corporation, were created by Act No. 88 of June 22, 1957. In general terms the Administration was created for the social, economic, and technical research in the field of housing and urban renewal; to study and evaluate the housing and urban renewal problems in the Commonwealth of Puerto Rico, and to make recommendations concerning policies and programs in relation to said problems; for the long-term housing and

urban renewal planning and programing and the promotion of construction of low-cost private dwellings. The Corporation was created as a corporate and politic public entity, to which the law conferred the same powers, duties, functions, and authority as were conferred under previous laws on the Puerto Rico Housing Authority and the Municipal Housing Authorities, and those conferred to the Social Program Administration of the Department of Agriculture and Commerce with respect to the minimum-requirement developments. The Corporation was also empowered to carry out recreative and artistic activities in public housing developments.[1]

Section 3 of Act No. 88 provided that the officials and employees of the Administration shall be included within the competitive service. Those of the Corporation shall be comprised within the exempt service, save that the officials and employees transferred to said Corporation who are regular employees within the competitive service shall retain their *status*. Petitioners allege that they have served under respondent Corporation and also under the Housing Authority of Puerto Rico.

Insofar as pertinent, Act No. 126 of May 6, 1938, as amended, upon creating the Puerto Rico Housing Authority as a public body corporate and politic with governmental functions and juridical personality, authorized it to appoint its officials, agents, and permanent and temporary employees, and to determine their qualifications, duties, and remuneration. Within its area of operation it was given the power to prepare, carry out, acquire, lease and operate housing projects and the reconstruction, improvement, alteration or repair of any housing project; to agree to any conditions

---

[1] The powers and functions conferred upon the Housing Authority of Puerto Rico as well as its property, contracts, obligations, etc., were transferred to the Urban Renewal and Housing Corporation by the executive order issued by the Governor on October 9, 1958.

attached to federal financial assistance relating to the determination of prevailing salaries and wages or payment of not less than prevailing salaries or wages or compliance with labor standards, in the development or administration of projects, and to include in any contract let in connection with a project, stipulations requiring that the contractor and any subcontractors comply with requirements as to minimum salaries or wages and maximum hours of labor. It was authorized to lease any dwellings, houses, accommodations, lands, buildings, and structures embraced in any housing project, and to establish rents therefor; to lease with a right to ownership and to sell improved lots with or without a dwelling; to set aside and sell lots at a reasonable price to private persons who are engaged in such activities which are useful and convenient to the project and to invest any funds held in reserve in property or securities.[2]

Insofar as pertinent herein, the Minimum Wage Act, No. 8 of April 5, 1941, as amended, defines "employer" as every natural or artificial person *of any kind* that, *whether or not for profit*, employs any number of workmen, laborers or employees or allows them to work, for any kind of remuneration. "Occupation" was defined as every work, labor, art, trade, employment or activity, *whether or not for profit*. "Laborer," "employee," or "worker" was defined as every natural person who exercises, discharges or performs any art, trade, employment or work, under the orders or for the benefit of another, or on the basis of a contract of lease of

---

[2] The Authority acquired other powers and functions by the Redevelopment and Housing Act, No. 97 of May 9, 1947, and by the Slum Clearance Act, No. 264 of May 14, 1945.

The amendment of Act No. 89 of June 22, 1962 included in the definition of "housing projects" other structures that could be used as community centers which may include premises devoted to commercial use.

See Act No. 79 of June 22, 1954, which authorized the Housing Authority to purchase and develop lands and to sell or lease building lots to persons of moderate income, *and to obtain from such leases and sales profits* which shall be used in developing slum clearance projects, etc.

services, or through remuneration of any kind . . . excluding professionals, executives, and administrators, as the latter were defined by the Minimum Wage Board. And the Act stated that the terms defined shall always be construed in the *widest* sense, and *shall not exclude* other terms embodying agricultural, industrial or commercial activities *or occupations or labor of any kind.*

The Minimum Wage Act of 1941 further provided that it shall not be applicable to persons employed by the United States of America, the Commonwealth of Puerto Rico, or the municipalities thereof, *neither shall persons employed . . . with corporations, authorities or analogous organizations created or controlled in part by said governments, be understood to be included, as far as regulations and decrees theretofore or hereafter issued by the Board.*

The Minimum Wage Act of 1956, No. 96 of June 26 of that year, which repealed the Minimum Wage Act of 1941 provided, insofar as pertinent—§ 33—that it is not applicable to persons employed by the Government of the United States or by the Government of the Commonwealth of Puerto Rico, with the exception of those agencies or instrumentalities of the latter which operate as private businesses or enterprises. "Employer" is defined as every natural or artificial person of whatever nature who or which, *whether or not for profit,* employs any number of laborers, workmen or employees, or allows them to work for compensation of any sort. "Industry" is defined as any field of economic activity, and embraces . . . the *construction,* as well as the personal services (except domestic), professional and commercial services. "Workman," "employee" or "laborer" is defined as every person who exercises, performs, or carries out any art, trade, employment or work under the orders or for the benefit of another, on the basis of a contract of hire for services, or for remuneration of any kind . . . in any industry.

Mandatory Decree No. 11 for the construction industry, in force since July 1, 1946 by virtue of the Minimum Wage Act of 1941, provided that the terms "employer" and "employee" or "laborer" have the same meaning given by the Minimum Wage Act, although restricted to the construction industry. It defined the construction industry as every act, process, operation, work or service necessary, incidental or related to the designing, project, fabrication, reconstruction, alteration, repair, and conservation of buildings, constructions, structures, works, and other fixed improvements. It further provided that said construction industry does not include constructions, improvement and public works done directly *by administration* by the United States of America, the People of Puerto Rico or any of its political subdivisions, *although it includes those performed by or for companies, corporations, authorities or analogous instrumentalities created or totally or partially controlled by the United States of America, the People of Puerto Rico, or any of its political subdivisions, not devoted to purely governmental functions.* Said Mandatory Decree No. 11 as wholly re-enacted to take effect March 20, 1956, still under the Minimum Wage Act of 1941, preserved the former provision as well as the definition of "employer," "employee" or "workman."

Mandatory Decree No. 44 which came into effect June 15, 1958 for the construction industry under the Minimum Wage Act of 1956, eliminated the former provision contained in Decree No. 11.[3]

Whichever was the intent of the Minimum Wage Board in using the concept "purely governmental" and what it meant by the adverb of manner "purely," we cannot give said part of the Decree a more restrictive or excluding inter-

---

[3] The respondent Corporation states in its brief, citing the records of the Minimum Wage Board, that it was due to the manner in which the Act of 1956 referred to persons employed by the government or its instrumentalities.

pretation than the corresponding provision of the Act. We have already seen that the Minimum Wage Act of 1941 under which the Decree was promulgated, upon excluding from its provisions persons employed by the Government of the United States of America, the Commonwealth of Puerto Rico, or the municipalities thereof, expressly eliminated from the exclusion those persons that worked with corporations, authorities or analogous organizations created or controlled in part by said governments.

■ We have already seen also that the Act itself defined "employer" as every natural or artificial person *of any kind,* whether or not for profit, who employs any number of workmen, laborers or employees or allows them to work for any kind of remuneration and that "occupation" was defined as every work, labor . . . employment or activity, *whether or not for profit.* It is not necessary to go into an analysis to determine whether the Puerto Rico Housing Authority or its successor, the Urban Renewal Corporation, exercises functions "purely" or merely governmental. We can accept that they exercise governmental functions as such public corporation. Under the provisions of the Minimum Wage Act of 1941 its workers and employees are not expressly excluded from said Act. On the contrary, in general terms, they are clearly included.

■■ Possibly, the position of plaintiffs is not exactly the same under the Minimum Wage Act of 1956 which, upon excluding from its provisions persons employed by the Government of the Commonwealth of Puerto Rico, eliminates from the exclusion, that is, it includes under the provisions of the law those agencies or instrumentalities which operate as private businesses or enterprises. It is not necessary now in order to decide this case in which we lack the elements of judgment furnished by the evidence, to determine the contents of the expression "its [the government] agencies

and instrumentalities which operate as private businesses or enterprises." Perhaps some facts are necessary to give it full application. Possibly it refers to the form or manner of performing the activities designated, since even if the public instrumentalities of the government obtain profit from their operations, said profit would not be for the private benefit of a citizen or a group of citizens. It is not necessary, above all, when we are deciding a case on a motion for dismissal, without the elements of judgment offered by the facts for the application of the law, because the Minimum Wage Act of 1956 itself provides in § 40 that all decrees, orders, rules, and regulations promulgated by the Minimum Wage Board under Act No. 8 of 1941 are hereby validated and ratified and shall continue in full force and effect in all their terms and with whatever modifications as to wages may be introduced thereto by this Act or by order of the Board, and that the provisions of the Mandatory Decrees in force on the date the Act of 1956 is approved, other than those relative to minimum wage, shall subsist with full force and effect even if the Board shall subsequently change the minimum wage rates.

In the Minimum Wage Act of 1941 the lawmaker expressed a clear and definite general public policy. He said, among other things, that the existence of labor conditions detrimental to the maintenance of the minimum standard of living necessary for the *health, efficiency, and general well-being of workers in the different occupations* causes . . . and (5) represents a state of manifest social injustice; that the policy of the law is, through the exercise by the Legislature of Puerto Rico of its powers to pass laws *for the protection of the life, health and safety of workers and laborers* to correct and eliminate the above-mentioned conditions of work in the different occupations; and to protect workers in their means of livelihood. Likewise, in the declaration of principles of the Minimum Wage Act of 1956

the lawmaker repeated that the existence of substandard wages, hours of work and other working conditions in industry is *detrimental to the health, efficiency and general well-being of workers* . . . leads to disputes between workers and employees . . . it thereby declared that the policy of the Commonwealth of Puerto Rico was to eliminate, as rapidly as possible, the substandard working conditions in industries; *to promote living, health and safety standards for workers.*

From the point of view of health, efficiency, living standard and social justice, said philosophy and the rationale of said public policy have as much sense for the worker or employee in a private industry or business as for the worker or employee doing similar work in a corporation or government instrumentality. So that only in the face of clear statements in which the lawmaker so provides without any room for doubt, prompted perhaps by another desirable policy—the wisdom or lack of wisdom in which the court plays no part—should the courts exclude its workers or employees from the protection of the labor laws. This means that said laws should be construed in such a manner as to protect the laborer or employee instead of excluding from him said protection.

This rule of construction becomes of greater strictness in the face of the constitutional declaration, of great hierarchy, to the effect that every worker is entitled to equal pay for equal work, to a reasonable minimum salary, to protection against risks to his health or person in his work or employment, and to an ordinary workday which shall not exceed eight hours of work; and that he may work in excess of his daily limit only if he is paid extra compensation at a rate never less than one and a half times the regular rate provided by law.

We have no need of the preceding declaration of the People to decide this case, which is decided on the basis of the proper statutory situation involved. The constitutional

problem analyzed and decided in *A. D. Miranda, Inc.* v. *Falcón*, 83 P.R.R. 708 (1961),[4] is not present. We do mention said constitutional declaration because together with the public legislative policy aforementioned, the tone is given of the pattern that the courts should follow as rule of construction of labor laws, which should be against the exclusion of a laborer from the favorable provisions of said laws, unless, as we already said, it is a case of clear statutory exclusion.

■■ It is rather unnecessary to repeat the legal rule, most seasonable, which requires that a suit may not be dismissed definitively for lack of cause of action or proper prayer, unless under every possible situation of fact involved and every possible conception of the applicable law, there be no ground for claim. To reach this criterion, the facts as well as the applicable law must be construed with the most favorable intendment to a claimant. The rule is imperative because to dismiss a suit without the elements of judgment offered by the evidence to find the applicable law is a drastic action which may lead to the negation of the right to be fully heard. In the light of the said provisions of the Minimum Wage Acts of 1941 and 1956, and of the Mandatory Decree for the construction industry, which remained in force by the Act of 1956, perhaps the trial court may agree with us that it is hazardous to decide definitively that these petitioners do not have any right to claim only on the information, in fact rather indefinite, offered by the complaints. It is preferable that the right of these employees be determined by the elements of judgment of the evidence, particularly if it is considered that the kind of operation of the respondent Corporation or the manner of performing its activities presents a question of fact. It is alleged that the

---

[4] Nor does it present an identical question as that decided in *Communications Authority* v. *Superior Court*, 87 P.R.R. 1 (1962).

claim for vacation leave was made pursuant to the agreement with the respondent Corporation.

The defense counsel of the Corporation states in his brief and we quote "we cannot lose sight of the fact that appellee is a public Corporation with governmental functions which cannot, even if it wished to, devote itself to activities proper to a private enterprise. If the appellee should be obliged to comply with the labor laws, our government program to provide dwellings for persons of low income and slum clearance would be jeopardized, inasmuch as the cost of construction and administration of public housing developments and other facilities which the appellee had at its disposal to try to solve the housing urgency, as well as the cost of slum clearance, would be so high that it would be impossible for the public treasury to bear the burden even if we could count on the economic assistance of the agencies of the Government of the United States.

"We admit that the workers are entitled to adequate salaries and working conditions, yet, we believe that the exercise of said right by this sector of the community should be subject to the welfare of the community in general and, if appellants' contention were to prevail in this case, the interest of the community in general would be adversely affected by the private interest of a few."

We are aware of the argument, which primarily corresponds to legislative criteria. But while it is flaunted as an argument for judicial criterion in the liberal or restrictive construction of said laws, we are persuaded to think that the minimum living standards necessary for health and efficiency and maladies of health do not select the bodies of the workers or employees. If said minimum standards and said health protection increase the costs of the respondent Corporation's plans, it might be preferable that said costs be distributed among the whole community, so that, in such infinitesimal degree, the burden becomes lighter for each one

rather than have a few bear the burden of the sacrifice, a few who, incidentally, are not economically much stronger in the community, nor better served than those for whose benefit the respondent Corporation carries out its projects.

The judgments of dismissal shall be set aside and the cases remanded to the trial court for further proceedings consistent with the pronouncements herein.